MINNIE P. HUNTSMAN, Guardian, *vs.* DANIEL FISH.

December 8, 1886.

**Action by Guardian after Majority of Ward.**—A guardian of minors may properly maintain an action to recover money collected for her as guardian by an attorney, notwithstanding the fact that, after the collection and before the commencement of the action, some of the minors have become of age.

**Action for Money—Answer waiving Proof of Demand.**—Proof of a demand upon such attorney for money collected by him is dispensed with in such action, when, in his answer, the attorney alleges that he has applied the money to the payment of a claim in his own favor against the guardian.

**Guardian—Acts done before Appointment.**—Before one's appointment as guardian, he has no authority to bind the estate of those who subsequently become his wards.

**Same—Liability for Services in Settling Account of Administrator.**— A guardian is not liable for services rendered or expenditures made in and about the settlement of the account of an administrator of an estate in which his wards are interested.

The plaintiff, as guardian of Sarah G. Huntsman, Henry R. Huntsman, Mary L. Huntsman, and Frances B. Huntsman, minor children of Diedrich A. Huntsman and Mary A. Huntsman, deceased, brought this action in the district court for Hennepin county, to recover money which had been received by the defendant for the account of the plaintiff as such guardian. The action was tried before *Young,* J., without a jury, and judgment directed for the plaintiff. Defendant appeals from an order refusing a new trial.

*Robert G. Evans* and *Ell Torrance,* for appellant.

*Chas. P. Biddle,* for respondent.

BERRY, J. This is an action to recover money collected by defendant as attorney of the plaintiff in her capacity of guardian of the four minor heirs of D. A. Huntsman.

1. After the collection was made, and before this action was commenced, two of the minors became of age, and the defendant contends that as to them the guardianship was at an end, and therefore the recovery by the *plaintiff* of the *whole* balance in his hands was wrong. But the money was collected and held by defendant *for* the guardian, and it was therefore entirely proper that she should reduce it to possession, get it into her own hands, in preparation for the settlement of the account required of her by law, and for the distribution which, upon such settlement, it would be her duty to make. The case is no different in principle from what it would have been if the guardian had deposited the money in a bank in her own name, when certainly she would have had the right to check it out, or sue the bank for it, if necessary in order to get possession of it as preparatory to settlement and distribution. Though, as respects the minors who had reached majority, the guardianship was at an end *in general*, yet, as respected the matter of the settlement of the guardian's account, and the consequent distribution, it still survived. *Jacobs* v. *Fouse*, 23 Minn. 51.

2. Conceding (without determining) that in general a demand is an essential prerequisite to the maintenance of an action for money collected by an attorney, we are clear that in this case the necessity of proving a demand is dispensed with by the ground upon which defendant plants himself in his answer. This ground is that, though he had collected the money as charged in the complaint, he had applied it to the payment of the plaintiff's indebtedness to him. This is, of course, in effect an absolute denial of plaintiff's right to recover under any circumstances. In face of such a position it must be assumed that a demand would have been unavailing,—an idle formality which the law does not require. The defendant by his answer estops himself from a contrary claim. See *Kellogg* v. *Olson*, 34 Minn. 103, (24 N. W. Rep. 364.) This estoppel appearing upon the pleadings, it was not *necessary* for the trial court, for the purpose of sustaining its order for judgment in plaintiff's favor, to find that there

was a demand, or that the necessity for one was dispensed with. *Brainard* v. *Hastings,* 3 Minn. 17, (45.)

3. The trial court finds that plaintiff was appointed guardian of the four minor heirs of D. A. Huntsman on September 6, 1882; that, prior to that time, one Hooper had been appointed administrator of Huntsman's estate, and guardian of said minors; that, *before plaintiff's appointment* as their guardian, defendant was employed by one Coulthard, but without any request by plaintiff, to appear in the interest of the heirs of the estate (including heirs other than the minors mentioned) in proceedings for the settlement of Hooper's final accounts as guardian and administrator; that defendant rendered services, as an attorney at law, "in and about the matter in which he was employed," including expenses and disbursements, of the reasonable value of $456.60, of which $30 have been paid, leaving a balance due of $426.60. These findings of fact are sufficiently supported by the evidence.

As an applicable conclusion of law the court finds that defendant is not entitled to have said balance of $426.60 allowed as a counterclaim in this action. This seems to be a proper application of the rules of law to the facts found. It not only appears that defendant was not *employed* by plaintiff to render the services and make the expenditures mentioned, but his employment was prior to plaintiff's appointment as guardian, and therefore when she, of course, had no authority to bind the estate of those who subsequently became her wards. *Wiswell* v. *Wiswell,* 35 Minn. 371, (29 N. W. Rep. 166.) Indeed, the evidence shows that almost all the services and expenditures were in fact *rendered* or *made* before plaintiff's appointment.

Again, if, under the doctrine of the *Besondy Case,* (*In re Besondy,* 32 Minn. 385; 20 N. W. Rep. 366,) the plaintiff, as guardian, could be compelled to pay for such part of the services and expenditures mentioned as were rendered or made in and about the settlement of Hooper's guardianship account, upon the ground that to that extent the services and expenditures were necessarily rendered or made for the benefit of the wards, there is no finding, nor, so far as we discover, any evidence, from which it could be ascertained what proportion of the services was rendered, or of the expenditures made, in

and about the settlement of the guardianship account, and what in and about the settlement of the administrator's account. There are therefore no *data* from which to determine how much (if anything) should be allowed defendant in this action upon the ground above mentioned. It is, however, fairly to be inferred from the evidence that by far the largest part of defendant's services and expenditures had reference to the settlement of Hooper's administration account; for these it was clearly not the duty of the plaintiff, *as guardian*, to pay. In addition to these considerations it is to be observed that defendant's services and expenditures were rendered with reference to an administrator's and guardian's account in which one or more heirs besides plaintiff's wards were interested.

We have been unable to appreciate the force of defendant's position that plaintiff has already *paid* him for the services and expenditures mentioned, by recognizing *his* application of the moneys collected by him to the payment of the same. It is true that she has not proceeded to force collection of the moneys so soon as she might have done, and it may be that she has, to some extent, acquiesced in his application, at least by not complaining of it; but we discover nothing which can be said to estop her, in the discharge of her duty as guardian, from maintaining this action, or insisting therein that the defendant is not lawfully entitled to make the application which he claims to have made. In this action, which is brought by plaintiff *as guardian*, the defendant could not set up a counterclaim based upon any personal liability of plaintiff in her private capacity, and we do not understand the defendant to contend to the contrary.

This is all which we deem it necessary to say in this case, and the result is that the order denying a new trial is affirmed.